Abraham J. Gellinoff, J.
These two proceedings pursuant to CPLR article 78 which raise virtually identical issues, are consolidated for purposes of this decision.
The petitioners in these proceedings were members of the Police Department, both of whom resigned from the force under wholly honorable circumstances, both of whom applied for reinstatement within a year of resignation, and both of whom were reinstated. However, since their actual reinstatement occurred more than one year after resignation, respondent commissioner, pursuant to section 80 of the Civil Service Law, has determined that their seniority is measured from the date of their reinstatement rather than from the date of their original appointment. Thus, their employment has been termi *1023 nated amid the recent layoffs of police officers mandated by the city’s economic crisis.
Subdivision 2 of section 80 of the Civil Service Law, in relevant part, provides that: "the original appointment of an incumbent shall mean the date of his first appointment on a permanent basis in the classified service followed by continuous service in the classified service on a permanent basis up to the time of the abolition or reduction of the competitive class positions. An employee who has resigned and who has been reinstated or reappointed in the service within one year thereafter shall, for the purposes of this section, be deemed to have continuous service.” And, pursuant to rule 6.2.1 of the Rules and Regulations of the New York City Civil Service Commission, respondent may reinstate a resigned member of the force provided such reinstatement is "accomplished” within one year. Various courts have determined that reinstatement is "accomplished” for purposes of the rule upon the filing of an application. However, they have interpreted section 80 as requiring actual reinstatement within one year in order that the employee be deemed to have continuous service (see Giovinazzo v Murphy, NYLJ, Aug. 10, 1966, p 9, col 1; Meskill v McManus, NYLJ, July 25, 1968, p 10, col 1; Matter of McGill v D’Ambrose, NYLJ, July 28, 1975, p 14, col 6).
Petitioner Vito Atkatsh was appointed a police trainee in 1964, at the age of 17. He became a probationary officer in 1967, and a patrolman in 1968. On June 23, 1972, he resigned from the force in order to conduct his brother-in-law’s business during the latter’s convalescence from illness. On April 1, 1973, some nine months later, he applied for reinstatement. During April he executed a formal application, and was scheduled for and took a medical examination. From then until June 15, 1973 the Police Department conducted an "investigation” to determine if petitioner should be reinstated. The investigation was then completed, and respondent commissioner approved the application on June 21, 1973 — two days prior to the expiration of one year from the date of resignation. There followed several delays for other administrative matters, and, when reinstatement was finally made official, it was set for July 20, 1973, one month beyond the year.
Petitioner James J. McCabe became a police officer in 1965. From then until October, 1970, he compiled an outstanding record in recovering stolen vehicles and arresting thieves of *1024 vehicles, by means of a retrieval system which he devised. He has received 57 citations for excellent performance, four citations for meritorious performance, and two commendations.
On October 4, 1970, McCabe resigned from the force in order to make use of his retrieval system in private industry. On August 2, 1971, 10 months later, he formally applied for reinstatement. Within a month he had taken and passed his physical examination. But it took one and a half months thereafter to process petitioner’s fingerprints to determine if he had been charged with a crime while off the force. Thereafter, due to a hiring freeze, additional bureaucratic maneuvering by the department was required, and petitioner was not formally reinstated until January 3, 1972, three months beyond the year.
Respondent’s power to reinstate police officers implies an obligation to determine applications for reinstatement in a manner which is not arbitrary, capricious or unreasonable (see Matter of McInerney v New York City Tr. Auth., 69 Misc 2d 615). And, where delay in processing such application may result in deprivation of rights to the applicant, the power to reinstate must also imply an obligation to process the application without unreasonable delay. Respondent may not demonstrate displeasure at those who resign from the force by delaying action on reinstatement until seniority is lost.
The court hesitates to set firm rules as to the period of time which may reasonably be spent investigating an applicant for reinstatement. Obviously, what is reasonable for one might be unreasonable for another; circumstances may well differ from case to case. But, upon the particular facts of the cases now before the court, the court must conclude that the delays in processing these applications for reinstatement were unreasonable, and that petitioners are entitled to the relief requested.
Both of these petitioners had spent most of their adult lives on the force and had unblemished records. They had been separated from the force only 9 or 10 months before applying for reinstatement, and both were quickly found physically fit to return to duty. Both had apparently remained in the metropolitan area during their separation from the force. That, under these circumstances, it should take four and five months to complete investigation of their fitness for reinstatement is incomprehensible, and respondent has utterly failed to proffer valid excuses.
*1025 In petitioner Atkatsh’s case, the time elapsed from respondent’s receipt of a formal application until respondent’s approval of the application was less than two months. Even with various delays, that approval was made within the one-year limitation. Further delaying the formal reinstatement until after the deadline was unreasonable. And in petitioner Mc-Cabe’s case, the month and a half delay in investigation while awaiting a fingerprint record is inexcusable. That information was readily available from respondent’s own Bureau of Criminal Identification virtually at a moment’s notice.
The petitions are in all respects granted.